**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

KHADIJA EL HASSNI, Individually
and on Behalf of All Others Similarly Situated,

Plaintiffs,

v.

CITY OF AURORA;
TODD CHAMBERLAIN, in his official and individual capacity as Chief of the Aurora Police Department;
JOHN and JANE DOE Officers and Detention Staff 1–10; in their individual capacity,

Defendants.

---

**CLASS ACTION COMPLAINT AND JURY DEMAND**

---

Plaintiff Khadija El Hassni, on behalf of herself and others similarly situated (collectively "Class" or "Class Plaintiffs"), by and through their attorneys Azra Taslimi and Matthew J. Cron of RATHOD | MOHAMEDBHAI LLC, respectfully allege for their Complaint and Jury Demand as follows:

## INTRODUCTION

1. This action challenges Defendants' policy, practice, and custom of requiring Muslim women who wear the hijab, a religious head-covering, to remove it for pre-arraignment booking photographs at the City of Aurora's detention facility.

2. Aurora enforces this policy without accommodation, without regard to religious belief, and without any legitimate penological or public safety need.

3. For Muslim women, the hijab is a manifestation of sincerely held religious belief and religious obligation. To require removal of the hijab in the presence of unrelated men constitutes a profound violation of privacy, dignity, bodily autonomy, and religious conscience.

4. Aurora has no written policy permitting religious accommodation during booking. Aurora has no written policy allowing Muslim women to retain the hijab during booking photographs. Instead, Aurora maintains uniform Standard Operating Procedures governing detainee processing, searches, and classification. These Procedures omit any reference to religious accommodation, despite acknowledged needs for accommodation in other identity categories.

5. As a direct result of Defendants' policies and practices, Plaintiff and members of the Class were forced by officers to remove their hijab during booking, causing humiliation, religious injury, emotional distress, and loss of dignity.

6. Defendants' conduct violates the First and Fourteenth Amendments to the United States Constitution, the Colorado Constitution, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and 42 U.S.C. § 1983.

7. Plaintiff brings this action individually for compensatory and punitive damages arising from the violation of her constitutional rights, and on behalf of a class of Muslim women for injunctive relief prohibiting Aurora from continuing to enforce its hijab-removal policy.

8. Plaintiff seeks a permanent injunction requiring Aurora to permit Muslim women who wear the hijab to retain it during booking photographs.

## JURISDICTION, VENUE, AND PARTIES

9. This action arises under 42 U.S.C. § 1983; the First, Fourth, and Fourteenth Amendments to the United States Constitution; the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §2000cc et seq. ("RLUIPA"); and related state law claims.

10. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

11. Venue is proper within this District under 28 U.S.C. § 1391(b). All of the events alleged herein occurred within the State of Colorado.

12. Supplemental pendent jurisdiction for Plaintiffs' state law claims is based on 28 U.S.C. § 1367 because the violations of federal law alleged are substantial and the pendent state law causes of action derive from a common nucleus of operative facts.

13. Plaintiff El Hassni is U.S. Citizen and a resident of, and domiciled in, the State of Colorado. Plaintiff is a practicing Muslim woman who has worn the hijab since adolescence as part of her sincerely held religious beliefs.

14. Defendant City of Aurora ("Aurora") is a municipal corporation organized under Colorado law and responsible for the operation of the Aurora Police Department ("APD") and the Aurora detention facility where the violations alleged herein occurred.

15. Aurora is a "person" under 42 U.S.C. § 1983 and is subject to liability for its policies, customs, and practices pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

16. Defendant Todd Chamberlain is the Chief of the Aurora Police Department and is sued in both individual and official capacity. As Chief, he is responsible for the

formulation, implementation, supervision, and enforcement of APD and detention policies, including the booking and photography policies at issue.

17. Defendants John Does 1–10 and Jane Does 1–10 are employees of Aurora whose identities are currently unknown. Upon information and belief, these Defendants participated in the enforcement of Aurora's hijab-removal booking policy against Plaintiff and class members. They are sued in their individual capacities. At all relevant times, Defendants acted under color of state law.

## CLASS ALLEGATIONS

14. Plaintiff brings this action pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure on behalf of herself and all others similarly situated.

15. The **Proposed Class** is defined as: All Muslim women who wear the hijab and were required to remove it for booking photographs in Aurora during the two years preceding this case and all future incidents.

16. **Numerosity**: The Class is so numerous that joinder of all members is impracticable. Upon information and belief, Aurora arrests and books hundreds of women each year, including Muslim women who wear the hijab.

17. **Ascertainability**: Upon information and belief, Defendants' practice and/or policy of requiring Muslim women to remove their hijab has been applied routinely to Muslim women during booking and processing at the Aurora detention facility during the applicable limitations period. The precise number of class members can be ascertained through Aurora's own booking, intake, photographic, and release records.

19. **Commonality**: There are questions of law and fact common to the Class, including but not limited to:

a) Whether Defendants enforce a policy, practice, or custom of requiring Muslim women to remove the hijab for booking photographs;

b) Whether Defendants provide reasonable religious accommodations during booking;

c) Whether Defendants' policy and/or practice violates the First and Fourteenth Amendments to the United States Constitution;

d) Whether Defendants' policy and/or practice violates RLUIPA;

e) Whether Defendants' policy and/or practice violates the Colorado Constitution;

20. These common questions are capable of class-wide resolution and will generate common answers sufficient to resolve the claims of the Class in a single adjudication without the risk of inconsistent legal determinations.

21. **Typicality**: Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and class members are Muslim women who wear the hijab and who were subjected to Defendants' hijab-removal policy during booking.

22. Plaintiff's claims arise from the same course of conduct that gives rise to the claims of the Class and are based on the same legal theories.

23. **Adequacy**: Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has no known conflict of interest with other class members and Plaintiff is represented by competent counsel experienced in civil rights litigation.

25. **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Individual litigation would be impracticable given the number of potential class members and the common issues of law and fact involved. A class action will promote judicial efficiency and ensure consistent resolution of the legal and factual issues presented.

26. **Class-wide Relief**: Defendants have acted and/or refused to act on grounds generally applicable to the Class by enforcing a uniform hijab-removal policy during booking that applies to all class members.

27. **Predominance**: Injunctive relief is appropriate with respect to the Class as a whole because such relief would enjoin the challenged policy for all class members and would not require individualized determinations.

28. The injunctive relief sought by Plaintiff is indivisible and will provide relief to every member of the Class in a single, unified order.

29. **Standing**: Plaintiff and class members have standing to seek injunctive and declaratory relief against Defendants' hijab-removal policy despite the fact that each named Plaintiff's booking has already occurred because the claim is one that is distinctly capable of repetition yet evading review.

30. The booking process is by nature temporary and takes place within hours of a detainee's arrival at the Aurora detention facility. It is highly unlikely that a detainee could seek counsel, file an emergency motion, and obtain a court ruling before the photograph is taken and the constitutional violation is complete.

31. The Class should be certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because the Defendants have acted on grounds generally applicable to the class, thereby making class-wide injunctive relief appropriate.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Religious Beliefs and Practice of Wearing the Hijab

32. Plaintiff Khadija El Hassni is a practicing Muslim woman.

33. As part of her sincerely held religious beliefs, Plaintiff wears the hijab, a headscarf that covers her hair in the presence of men outside her immediate family.

34. For Muslim women, the hijab is both a religious obligation and a manifestation of modesty, dignity, and religious expression.

35. To remove the hijab in the presence of men who are not part of the immediate family constitutes a serious violation of religious conscience.

36. Plaintiff has worn the hijab continuously since adolescence.

37. Plaintiff wears the hijab in her daily life, including during interactions with government institutions, and has been permitted to wear the hijab in state-issued identification photographs such as her driver's license and passport.

38. Plaintiff does not, under any circumstance, uncover her hair in the presence of unrelated men.

### B. Plaintiff's Arrest and Booking at Aurora's Detention Facility

38. On or around August 4, 2025, Aurora Police Department ("APD") officers responded to a domestic dispute call at Plaintiff's residence in Aurora.

39. APD officers arrested Plaintiff and transported her to the Aurora detention facility for booking and detention.

40. Upon arrival at the Aurora detention facility, Plaintiff was escorted into the booking area.

41. The booking area is configured as an open, visible space where detainees, officers, and staff could observe one another.

42. Plaintiff could see other detainees in nearby holding areas, and those detainees had a clear line of sight into the booking area.

43. The area was actively staffed and monitored, and multiple individuals were moving through the booking area during intake.

44. At least four to five Aurora officers were present in or around the booking area during Plaintiff's intake. Among them was a male officer who directed Plaintiff to remove her hijab so that a booking photograph could be taken without any head covering.

45. Plaintiff immediately informed the officer that she was Muslim and that her hijab was worn for religious reasons. She explained that removing it in the presence of men violated her faith.

46. Plaintiff begged that she be permitted to wear her hijab for the booking photograph.

47. Plaintiff was told by booking officers that she had no choice and that the hijab would have to be removed for the booking photograph.

48. Due to the presence of cameras, Plaintiff understood that the booking area was under continuous video surveillance and that her forced unveiling was being recorded.

49. Plaintiff knew that the recording, and the resulting booking photograph, would be made available and could be viewed by individuals beyond those physically present.

50. This knowledge intensified her distress, confusion, and sense of humiliation.

51. Under compulsion and duress, and having been expressly informed that she had no other option, Plaintiff ultimately removed her hijab as ordered.

52. She covered her face with her hands in mortification and cried immediately after removing the hijab.

53. Her hair was exposed in an open booking environment visible to male officers, male detainees, and facility surveillance systems.

54. Plaintiff observed other detainees looking toward her during this process, heightening her sense of exposure.

55. Officers then generated a booking photograph depicting Plaintiff without her hijab.

56. Plaintiff understood that booking photographs are routinely accessible to jail personnel and could be viewed by countless, unknown male employees of the detention facility.

57. Plaintiff further understood that such photographs may be retained, shared internally, or potentially disclosed to the public.

58. The creation of a permanent visual record of her forced unveiling caused Plaintiff significant anxiety and emotional harm.

59. Plaintiff’s booking photograph depicts her crying while she is photographed unveiled.

60. Plaintiff felt intense anxiety, humiliation, fear, and distress due to being compelled to violate her religious beliefs and appear unveiled in front of unrelated men.

### C. Uniformity of Aurora's Hijab-Removal Policy and Practice

62. Upon information and belief, Aurora enforces a uniform policy, practice, or custom requiring Muslim women who wear the hijab to remove it for booking photographs.

63. Upon information and belief, Aurora does not provide religious accommodations for those wearing a hijab during booking.

64. Upon information and belief, Aurora applies its hijab-removal practice to all Muslim women who wear the hijab during booking and intake processing.

65. Aurora's enforcement of its hijab-removal practice is consistent with the Class definition alleged in this Complaint.

### D. Aurora's Written SOPs Address Numerous Identity-Based Needs but Omit Religious Accommodation

66. Aurora maintains written Standard Operating Procedures ("SOPs") that govern detainee processing, searches, classification, and detainee identity considerations at its detention facility.

67. Aurora's SOP-02 "Detainee Processing" governs intake, property handling, and photographic capture procedures.

68. The SOPs contains no express provision instructing its officers of the need for religious accommodation during booking.

69. Specifically, the SOPs contains no provision for religious accommodation for detainees who wear hijab or other religious clothing.

70. In contrast, Aurora's SOP-11-07 "Transgender and Gender Variant Detainees" establishes detailed accommodation requirements for transgender detainees, including provisions for private searches, supervision by personnel of the same gender identity, housing placement, and protection from humiliation or harassment.

71. Aurora's SOP-04 "Accountability" establishes supervisory responsibility for the enforcement and compliance of SOPs within the detention facility.

72. These SOPs demonstrate that Aurora has adopted structured policies for detainee processing and identity-based accommodations but has omitted any requirement to accommodate religious freedom.

73. Upon information and belief, Aurora does not train its personnel on the religious significance of the hijab or on protocols for religious accommodation during booking.

74. The absence of a written religious accommodation protocol, coupled with the existence of policies for other protected classes, indicates that Aurora made a conscious and deliberate choice not to accommodate religious practices during booking.

**E. Lack of Legitimate Necessity for Hijab Removal**

75. Requiring Muslim women to remove their hijab for booking photographs serves no legitimate governmental interest that could not be fully and more effectively achieved by a less restrictive alternative.

76. The stated purpose of booking photographs is to create a reliable photographic record of an arrestee for identification.

77. However, as the United States District Court for the Southern District of New York held in *Clark v. City of New York*, “photographing the arrestee in her ordinary appearance likely furthers law enforcement's interest in identification — rather than impeding such interest — because arrestees who have a sincere religious belief that requires them to wear a head covering are likely to be wearing that same covering when the need to identify them arises.” 560 F. Supp. 3d 732, 742 (S.D.N.Y. 2021).

78. Additionally, state and federal agencies routinely allow hijab in identification photographs, including the Colorado Department of Revenue (driver licensing),the U.S. Department of State (passport issuance), and United States Citizenship and Immigration Services (for biometric photographic records).

79. Aurora could accommodate religious beliefs by photographing detainees with hijab.

80. As a result of Defendants’ actions, Plaintiff suffered humiliation, emotional distress, religious trauma, physical discomfort, and dignitary injury.

## <u>FIRST CLAIM FOR RELIEF</u>
### Violation of the First Amendment (Free Exercise Clause)
### 42 U.S.C. § 1983
### Against All Defendants

81. Plaintiff hereby incorporates all the paragraphs of this Complaint as if fully set forth herein.

82. 42 U.S.C. § 1983 prohibits any person acting under color of state law to deprive a citizen of rights secured by the United States Constitution.

83. At all relevant times, Defendants acted under color of state law to deprive Plaintiff and class members of rights secured by the First Amendment.

84. The First Amendment's Free Exercise Clause protects the rights of citizens to believe and practice their religion freely.

85. Defendants' policy, practice, and custom of requiring Muslim women to remove their hijabs during booking substantially deprived Plaintiff and the class members of their right to freely practice and exercise their religion.

86. Defendants' actions, as described herein, were undertaken intentionally, maliciously, willfully, wantonly, and/or in reckless disregard of Plaintiff and class members' federally protected rights.

87. Defendants' conduct violated clearly established rights belonging to Plaintiff and class members of which reasonable officials knew or should have known. Defendant City of Aurora continues to maintain and enforce the challenged policy, practice, and custom. So long as it does, every future arrest of a Muslim woman who wears the hijab in Aurora will produce an identical violation.

88. Because the nature of a booking photograph is inherently quick and devoid of formal process, there is no realistic opportunity for a Muslim woman faced with the directive to remove the hijab to challenge that order prior to enforcement. Thus, he claims are capable of repetition, yet evading review.

89. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and class members have sustained damages and have suffered, and continue to suffer, severe emotional distress, religious trauma, humiliation, dignitary injury, and embarrassment.

## <u>SECOND CLAIM FOR RELIEF</u>
**Violation of the Fourteenth Amendment (Equal Protection)**

**42 U.S.C. § 1983**
**Against All Defendants**

89. Plaintiff hereby incorporates all the paragraphs of this Complaint as if fully set forth herein.

90. At all times relevant to this Complaint, Defendants acted under color of state law within the meaning of 42 U.S.C. § 1983 to deprive Plaintiff and class members of rights secured by the Fourteenth Amendment.

91. The Equal Protection Clause of the Fourteenth Amendment guarantees no state shall deny any person within its jurisdiction the equal protection of the laws.

92. The Equal Protected Clause prohibits government officials from treating individuals differently based on membership in a protected class without adequate justification.

93. Religion is a protected classification under the Equal Protection Clause and government action that discriminated based on religion is subject to strict scrutiny.

94. By subjecting Plaintiff and Class Members to a booking practice that imposes a substantial burden on religious exercise not imposed on comparably situated detainees, Defendants have denied Plaintiff and class members equal protection of the laws in violation of the Fourteenth Amendment.

95. Defendants' actions, as described herein, were undertaken intentionally, maliciously, willfully, wantonly, and/or in reckless disregard of Plaintiff and class members' federally protected rights.

96. Defendants' conduct violated clearly established rights belonging to Plaintiff and Class of which reasonable officials knew or should have known.

97. As a direct and proximate result, of Defendants' unlawful conduct, Plaintiff and class members have sustained damages and have suffered, and continue to suffer, severe emotional distress, religious trauma, humiliation, dignitary injury, and embarrassment.

**THIRD CLAIM FOR RELIEF**
**Violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA)**
**42 U.S.C. § 2000cc *et. seq*.**
**Against Defendant City of Aurora**

98. Plaintiff hereby incorporates all the paragraphs of this Complaint as if fully set forth herein.

99. Congress enacted the Religious Land Use and Institutionalized Persons Act ("RLUIPA") which provides that no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution unless the government demonstrates that the imposition of the burden (1) is in furtherance of a compelling governmental interest and (2) is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C. § 2000cc- (a)(1)(A) and (B).

100. RLUIPA includes a private right of action permitting persons subjected to substantial burdens on religious exercise to seek judicial relief.

101. City of Aurora, as the operator of the Aurora detention facility, is a governmental entity subject to RLUIPA.

102. At all relevant times, Plaintiff and class members were persons residing or confined in an institution within the meaning of RLUIPA.

103. Plaintiff and class members engaged in "religious exercise" within the meaning of RLUIPA by wearing the hijab as a manifestation of sincerely held religious belief.

104. Wearing the hijab is a form of religious exercise that is protected.

105. Defendants substantially burdened Plaintiff and class members' religious exercise by requiring them to remove their hijab for booking photographs.

106. Defendants' policy, practice, and custom does not further a compelling governmental interest.

107. Even if Defendants could articulate a compelling governmental interest, the requirement to remove the hijab entirely is not the least restrictive means of furthering that interest.

108. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and class members have sustained damages and have suffered, and continue to suffer, severe emotional distress, religious trauma, humiliation, dignitary injury, and embarrassment.

**FOURTH CLAIM FOR RELIEF**
**Violation of the Colorado Constitution (Religious Freedom and Equal Protection)**
**C.R.S. § 13-21-131**
**Against Individual Officer Defendants in their Individual Capacity**

109. Plaintiff hereby incorporates all the paragraphs of this Complaint as if fully set forth herein.

110. C.R.S. § 13-21-131 provides that a "peace officer, as defined in C.R.S. § 24-31-901(3), who, under color of law, subjects or causes to be subjected… any other person to the deprivation of any individual rights that create binding obligations on

government actors secured by the Bill of Rights, article II of the state constitution, is liable to the injured party for legal or equitable relief or any other appropriate relief."

111. Each of the individual Officer Defendants is a "peace officer" within the meaning of C.R.S. § 24-31-901(3), as each is employed by the City of Aurora, a political subdivision of the State of Colorado, and is required to be certified by the Peace Officer Standards and Training ("P.O.S.T.") Board pursuant to C.R.S. § 16-2.5-102.

112. At all times relevant to this Complaint, the individual Officer Defendants were acting under color of law in their capacity as Aurora Police Department officers during the booking and intake processing of Plaintiff at the Aurora detention facility. Plaintiff has individual rights that create binding obligations on government actors secured by Article II of the Colorado Constitution, including:

a. The right to the free exercise and enjoyment of religion, secured by Article II, Section 4 of the Colorado Constitution, which provides that the "free exercise and enjoyment of religious profession and worship, without discrimination, shall forever be guaranteed"; and

b. The right to equal protection of the laws, secured by Article II, Section 29 of the Colorado Constitution, which provides "Equality of rights under the law shall not be denied or abridged by the state of Colorado or any of its politics subdivisions on account of sex."

113. Colorado's constitutional protections for religious liberty and equal treatment are interpreted independently of and more broadly than analogous federal protections.

114. Defendants' policy, practice, and custom requiring Muslim women to remove the hijab during booking violated the rights of Plaintiff and class members under Article II of the Colorado Constitution.

115. Defendants' actions, as described herein, were undertaken intentionally, maliciously, willfully, wantonly, and/or in reckless disregard of Plaintiff and class members' federally protected rights.

116. Defendants' conduct caused Plaintiff and class members to suffer religious injury, emotional distress, humiliation, dignitary harm, bodily invasion, and adverse effects on her personal security and privacy.

117. C.R.S. § 13-21-131 creates a private right of action for the deprivation of rights secured by the Colorado Constitution by governmental actors acting under color of law and expressly eliminates any defense based on qualified immunity.

118. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and class members have sustained damages and have suffered, and continue to suffer, severe emotional distress, religious trauma, humiliation, dignitary injury, and embarrassment.

## INDIVIDUAL DAMAGES CLAIMS (NAMED PLAINTIFF ONLY)

### SEVENTH CLAIM FOR RELIEF
### Violation of the Colorado Constitution Under Article II, § 3, 7, and 25
### C.R.S. § 13-21-131
### (Individual Damages Claim Only)
### Against All Defendants

119. Plaintiff hereby incorporates all the paragraphs of this Complaint as if fully set forth herein.

120. At all times relevant to this Complaint, Defendants acted under color of law and within the scope of their duties as employees, agents, or officials of the City of Aurora.

121. The Colorado Constitution guarantees multiple rights relevant to this action, including:

a. Article II, § 3 – Inalienable Rights, which protects personal security, bodily integrity, and equal protection of the laws;

c. Article II, § 7 – Security of Person and Property, which protects against unreasonable searches and seizures and invasions of privacy;

d. Article II, § 25 – Due Process of Law, which protects substantive liberty interests, bodily dignity, and equal treatment under the law; and

122. Defendants violated Plaintiff's rights under the above-referenced provisions of Article II by:

1. subjecting Plaintiff to discriminatory and unequal treatment on the basis of religion and sex;
2. Interfering with Plaintiff's bodily autonomy, dignity, and personhood; and
3. Depriving Plaintiff of liberty interests without due process of law.

123. Colorado's constitutional protections for bodily integrity and dignity are interpreted independently of and more broadly than analogous federal protections.

124. Defendants' conduct caused Plaintiff to suffer religious injury, emotional distress, humiliation, dignitary harm, bodily invasion, and adverse effects on her personal security and privacy.

125. C.R.S. § 13-21-131 creates a private right of action for the deprivation of rights secured by the Colorado Constitution by governmental actors acting under color of law and expressly eliminates any defense based on qualified immunity.

126. Pursuant to C.R.S. § 13-21-131, Plaintiff is entitled to compensatory damages, punitive damages against the individual Defendants, attorneys' fees, costs, and such other relief as may be appropriate.

## SEVENTH CLAIM FOR RELIEF
### Intentional Infliction of Emotional Distress
### (Individual Damages Claim Only)
### Against All Defendants

127. Plaintiff hereby incorporates all the paragraphs of this Complaint as if fully set forth herein.

128. Defendants' conduct, including compelling Plaintiff to remove the hijab during booking, was unnecessary and constituted extreme and outrageous behavior and exceeded all reasonable bounds of decency.

129. Defendants acted intentionally and for the sole purpose of causing severe emotional distress to Plaintiff.

130. Defendants' conduct caused Plaintiff to suffer religious injury, emotional distress, humiliation, dignitary harm, bodily invasion, and adverse effects on her personal security and privacy.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully request an order certifying this suit as a class action pursuant to Federal Rule of Civil Procedure 23, and request judgment against Defendant as follows:

a. A declaration that Defendants' policy, practice, and custom of requiring Muslim women who wear the hijab to remove it for booking photographs violates the First and Fourteenth Amendments to the United States Constitution, RLUIPA, and Article II of the Colorado Constitution.

b. A permanent injunction prohibiting Defendants from enforcing any policy, practice, or custom requiring Muslim women who wear the hijab to remove it for booking photographs at Aurora's detention facility;

c. An order requiring Defendants to permit Muslim women who wear the hijab to retain the hijab during booking photographs;

d. An order requiring Defendants to adopt written policies, training, and supervisory procedures designed to ensure compliance with the injunctive relief ordered by the Court; and

e. An order requiring Defendants to provide periodic compliance reporting to the Court for such time as the Court deems appropriate.

f. An award of compensatory damages to Plaintiff for the constitutional and dignitary injuries she suffered as a result of Defendants' conduct;

g. An award of punitive damages against the individual-capacity Defendants for conduct undertaken with reckless or callous disregard for Plaintiff's rights;

h. An award of reasonable attorneys' fees, costs, and litigation expenses pursuant to 42 U.S.C. § 1988, C.R.S. § 13-21-131, and other applicable law;

i. An award of pre-judgment and post-judgment interest as allowed by law;

j. Such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff requests a trial by jury on all issues so triable.

Respectfully Submitted: April 08th, 2026

**RATHOD | MOHAMEDBHAI LLC**

*s/ Azra Taslimi*
Azra Taslimi
Matt Cron
2701 Lawrence St., Suite 100
Denver, CO 80205
(303) 578-4400 (t)
(303) 578-4401 (f)
at@rmlawyers.com
mc@rmlawyers.com

ATTORNEYS FOR PLAINTIFFS